THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| WESLEY THOMPSON,<br><br>    Plaintiff,<br><br>v.<br><br>SPENCER TURLEY et al.,<br><br>    Defendants. | **MEMORANDUM DECISION<br>AND DISMISSAL ORDER**<br><br>Case No. 4:22-CV-67 DN<br><br>District Judge David Nuffer |

  Plaintiff Wesley Thompson, a Utah state inmate, filed this *pro se* civil-rights action, *see* 42 U.S.C.S. § 1983 (2025),[1] *in forma pauperis*, *see* 28 *id.* § 1915. (ECF Nos. 1, 4-5.)

  After screening Plaintiff's Complaint, the Court ordered Plaintiff to cure its numerous deficiencies. (ECF Nos. 5, 22.) In that Cure Order, the Court gave specific guidance on the deficiencies, along with other details to help Plaintiff file an amended complaint with valid claims. (ECF No. 22.)

  Plaintiff then filed, "Response to Court's Order and Relief from Its Judgment," in which Plaintiff asked "to stand on his Complaint as originally filing," stating "he believes it states sufficient facts to survive a motion to dismiss or a motion for summary judgment." (ECF No. 24.) The Court granted Plaintiff's motion, stating, the "Court will screen each claim and

---

  [1]The federal statute creating a "civil action for deprivation of rights" reads, in pertinent part:
    Every person who, under color of any statute, ordinance, regulation, custom, or
    usage, of any State or Territory . . ., subjects, or causes to be subjected, any
    citizen of the United States or other person within the jurisdiction thereof to the
    deprivation of any rights, privileges, or immunities secured by the Constitution
    and laws, shall be liable to the party injured in an action at law, suit in equity, or
    other proper proceeding for redress, except that in any action brought against a
    judicial officer for an act or omission taken in such officer's judicial capacity,
    injunctive relief shall not be granted unless a declaratory decree was violated or
    declaratory relief was unavailable.
42 U.S.C.S. § 1983 (2025).

defendant in the original complaint, (ECF No. 5), for dismissal or an order effecting service upon valid defendants who are affirmatively linked to valid claims. *See* 28 U.S.C.S. § 1915A (2024)." (ECF No. 25.)

Having now scrupulously screened and liberally construed[2] the Complaint under its statutory review function,[3] the Court dismisses this action.

## A. BACKGROUND

The Complaint names two defendants: Debbie Oviatt, Central Utah Correctional Facility (CUCF) grievance coordinator; and Spencer Turley, Utah Department of Corrections (UDOC) division director of prison operations. (ECF No. 5.) Plaintiff describes them each as being "directly and individually responsible for the wrongful actions alleged herein." (*Id.*)

Plaintiff asserts that, during his incarceration by UDOC, these defendants violated his federal constitutional rights as follows: invalid confiscation of his money; "isolation without

---

[2] The Court recognizes Plaintiff's *pro se* status, and so construes his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Still, such liberal reading is meant merely to overlook technical formatting errors and other similar defects in Plaintiff's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not excuse Plaintiff from the duty to meet various rules and procedures directing litigants and counsel or the mandates of substantive law; regarding these, the Court will treat Plaintiff with the same standards applicable to counsel licensed to practice law before this Court's bar. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

Also during this proceeding, Plaintiff has been charged with observing this District of Utah local rule: "A party proceeding without an attorney (unrepresented party or *pro se* party) is obligated to comply with: (1) the Federal Rules of Civil Procedure; (2) these Local Rules of Practice; (3) the Utah Standards of Professionalism and Civility; and (4) other laws and rules relevant to the action." DUCivR 83-1.6(a).

[3] The screening statute reads:
> (a) Screening.—The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.S. § 1915A (2025).

cause"; denial of "due process to appeal a disciplinary proceeding"; and disruption of timely grievances and legal access. (*Id.*) To remedy his alleged consequent injuries of pain and loss of money, Plaintiff requests damages. (*Id.*) He further requests that policy be changed regarding deductions from his inmate account for medical-issue supplies and for collecting fines. He also seeks reimbursement for all fines and medical-issue costs taken from his account. (*Id.*)

## B. ANALYSIS--FAILURE TO STATE A CLAIM

### 1. Standard of Review for *Sua Sponte* Dismissals

Assessing a complaint for failure to state a claim upon which relief may be granted, this Court takes all well-pleaded factual assertions as true and regards them in a light most advantageous to the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Dismissal is appropriate when--though the facts are viewed in the plaintiff's favor-- the plaintiff has not posed a "plausible" right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)*; Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). When a civil-rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the Court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 554-55). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original). "[T]he complaint must contain something more than 'unadorned, the-

defendant-unlawfully-harmed-me accusation[s].'" *Eaves v. Kory*, No. 24-1048, 2024 U.S. App. LEXIS 12964, at *2-3 (10th Cir. May 30, 2024) (unpublished) (quoting *Iqbal*, 556 U.S. at 678). Also, "[f]acts, not conclusions, must be pleaded--'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including where a 'legal conclusion [is] couched as a factual allegation.'" *Renaud v. Ross*, No. 1:22-CV-212, 2023 U.S. Dist. LEXIS 19808, at *8 (D. Wy. Jan. 27, 2023) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

As the Court reviews the sufficiency of Plaintiff's allegations, it painstakingly does so per individual defendant, per cause of action. *See Williams v. Utah Dep't of Corr.*, 928 F. 3d 1209, 1212 (10th Cir. 2019) (stating plaintiff must "explain[] which . . . prison-official defendants are liable for what improper conduct"). Indeed, § 1983 cases often include a list of defendants, like

> the government agency and a number of government actors sued in their individual capacities. . . . [I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Robbins*, 519 F.3d at 1249-50 (emphasis in original) (citing *Twombly*, 550 U.S. at 565 n.10). When a complaint "fails to isolate the allegedly unconstitutional acts of each defendant," the plaintiff has not carried the burden of providing "adequate notice as to the nature of the claims against each." *Id.* at 1250. For instance, when a complaint uses "the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Id.*[4]

---

[4]Because the original complaint had "not properly affirmatively link[ed] specific civil-rights violations to defendants," the Cure Order contained a section marked, "Affirmative Link," under which Plaintiff was alerted that

The facts stated in each of the following sections are taken from Plaintiff's allegations and viewed in a light most favorable to him. They are taken as true for this Order only.

---

each defendant must be linked to the particular behavior that constitutes a legal claim. (ECF No. 22.) This quote from a case was provided to Plaintiff so that he would understand his burden:

> [A] plaintiff who brings a constitutional claim under § 1983 can't obtain relief without first satisfying the personal-participation requirement. That is, the plaintiff must demonstrate the defendant "personally participated in the alleged constitutional violation" at issue. *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018). Indeed, because § 1983 is a "vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Robbins*, 519 F.3d at 1250 (explaining that when plaintiff brings § 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*" (emphasis in original)); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998)) (holding district court's analysis of plaintiff's § 1983 claims was "infirm" where district court "lump[ed]" together plaintiff's claims against multiple defendants-- "despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]"--and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a constitutional] claim").

(*Id.* at 5-6.) (quoting *Estate of Roemer v. Johnson*, 764 F. App'x 784, 790-91 (10th Cir. 2019)).

Plaintiff was further warned,

> "A plaintiff's failure to satisfy this requirement [of pleading personal participation by each defendant] will trigger swift and certain dismissal." *Id.* at 790 n.5. The Tenth Circuit has "gone so far as to suggest that failure to satisfy the personal-participation requirement will not only justify dismissal for failure to state a claim; it will render the plaintiff's claim frivolous." *Id.*

(*Id.* at 6.) (quoting *Roemer*, 764 F. App'x at 790 n.5).

Other directions in the Cure Order stated,

> (ii) The complaint must clearly state what each defendant--typically, a named government employee--did to violate Plaintiff's civil rights. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (stating personal participation of each named defendant is essential allegation in civil-rights action). "To state a claim, a complaint must 'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, 338 F. App'x 757, (10th Cir. 2009) (unpublished) (emphasis in original) (quoting *Robbins*, 519 F.3d at 1250). Plaintiff should also include, as much as possible, specific dates or at least estimates of when alleged constitutional violations occurred.
>
> (iii) Each cause of action, with the facts and citations that directly support it, should be stated separately. Plaintiff should be as brief as possible while still using enough words to fully explain the "who," "what," "where," "when," and "why" of each claim. *Robbins*, 519 F.3d at 1248 ("The [*Bell Atlantic Corp. v.*] *Twombly* Court was particularly critical of complaints that 'mentioned no specific, time, place, or person involved in the alleged [claim].' [550 U.S. 544, 565] n.10 (2007). Given such a complaint, 'a defendant seeking to respond to plaintiff's conclusory allegations . . . would have little idea where to begin.' *Id.*").

(ECF No. 22, at 3-4.)

## 2. Money Confiscation

Plaintiff makes the following allegations about confiscation of his money: Defendant Turley "as the supervisor of the defendants who confiscated the Petitioner's money has violated petitioner's constitutional rights." (ECF No. 5, at 2.)  And, Turley "creat[ed] the policy or allow[ed] the policy to continue that allows his subordinates to violate [Plaintiff's] rights." (*Id.* at 2-3.) The UDOC policy "allows inmate accounting to collect 50% of cost of medical issue supplies," though Utah statute "does not approve collection of funds for medical issues supplies." (*Id.* at 3.)

Plaintiff contends that his claims as to the money confiscation are brought under **a.** the Equal Protection Clause, about which he brusquely says that his "[i]nterests to equal protection is being violated based upon the Department of Corrections charging 50% medical issue supplies"; and **b.** the Fourteenth Amendment, which he alleges was violated when policy was promulgated "which does not comply with state law by collecting fines and costs for medical issue supplies. (*Id.* at 6-7.)

### a. *Respondeat superior*

Plaintiff begins by asserting Defendant Turley violated his constitutional rights "as the supervisor of the defendants who confiscated the Petitioner's money" and as the individual creating or allowing the policy by which "his subordinates to violate[d Plaintiff's] rights." (*Id.* at 2-3.) But, as Plaintiff was notified in the Cure Order, this assertion "inappropriately alleges [a] civil-rights violation on a *respondeat-superior* theory." (ECF No. 22, at 2.) Under § 1983, supervisors are not culpable for employees' tortious acts. *See Iqbal*, 556 U.S. at 676; *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 689 (1978); *Barney v. Pulsipher*, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

Indeed, a plaintiff may not establish supervisory liability solely by asserting that defendants oversaw personnel who violated the Constitution. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). Further, mere knowledge of an underling's allegedly unconstitutional conduct is not enough to hold a supervisor liable. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

As a first step, the plaintiff must allege that the supervisors' subordinates breached plaintiff's federal rights. *Dodds*, 614 F.3d at 1195. Then, the plaintiff must allege an "affirmative link between the supervisor's conduct and the violation." *Id.*; *see also Iqbal*, 556 U.S. at 676 (stating, in asserting § 1983 claims against state government actor in individual capacity, "plaintiff must plead that each Government-official defendant, *through the official's own individual actions, has violated the Constitution*" (emphasis added)). Such a connection may be adequately shown by alleging as follows: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199; *see also Brown v. Montoya*, 662 F.3d 1152, 1164-65 (10th Cir. 2011) ("[S]upervisory liability must be based on [a defendant's] Policy."). Stated another way, there must be "an 'affirmative' link . . . between the unconstitutional acts by [the supervisors'] subordinates and [the supervisors'] 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct.'" *Dodds*, 614 F.3d at 1200-01 (quoting *Rizzo v. Goode*, 423 U.S. 362, 371 (1976)).

But, the mere allegations that a defendant "maintains a position of authority . . . and instituted [a] policy . . . are insufficient to plausibly claim . . . personal participation." *Pittman v. Williams*, No. 26808, 2023 U.S. App. LEXIS 26808, at *4-5 (10th Cir. Oct. 10, 2023)

Page 7 of 16

(unpublished). And here Plaintiff has done nothing more than suggest Turley was an authority figure who instituted a policy; this does not meet Plaintiff's pleading burden.

### b. Equal protection

Plaintiff's superficial, unsupported claim that his "[i]nterests to equal protection [are] being violated based upon the Department of Corrections charging 50% medical issue supplies" does not adequately link each element of an equal-protection claim to specific named defendant(s).

> The Fourteenth Amendment ensures that states give their citizens "equal protection of the laws." U.S. Const. amend. XIV, § 1. In other words, states "must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). Thus, "to assert a viable equal protection claim, [Plaintiff] must first make a threshold showing that [he was] treated differently from others who were similarly situated to [him]." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998). If he makes such a showing, we must apply rational basis review to the classification at issue because [Plaintiff] is not part of a suspect class and is not alleging a fundamental-right violation. *Teigen v. Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007). Under the rational basis standard, [Plaintiff's] claim will fail "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

*Carney v. Okla. Dep't of Pub. Safety*, 875 F.3d 1347, 1353 (10th Cir. 2017); *see Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 752 (10th Cir. 2019) (explaining that--to state equal-protection claim--plaintiff must allege facts showing (a) prison officials treated him differently from similarly situated inmates and (b) disparate treatment was not reasonably related to penological interests).

Simply and irredeemably, Plaintiff's allegations do not suggest that he is being charged for medical supplies differently from other inmates, whether similarly situated or not. *See Harrell v. Ross*, No. 23-8007, 2024 U.S. App. LEXIS 2317, at *12-13 (10th Cir. Feb. 2, 2024)

(unpublished) ("A plaintiff must do more than make conclusory allegations to establish an equal protection claim."). This derails his whole equal-protection argument which is not considered further.

### c. Violation of state statute

Plaintiff asserts that Turley violated the Fourteenth Amendment when UDOC policy was promulgated "allow[ing] inmate accounting to collect 50% of cost of medical issue supplies," though Utah statute "does not approve collection of funds for medical issues supplies." (ECF No. 5, at 3, 6.) It is unclear exactly what Plaintiff may intend by this undeveloped reference to the Fourteenth Amendment, when his real gripe appears to be the UDOC policy's failure to comply with state statute. With his words, though, he has not stated a federal constitutional claim, instead challenging Turley's behavior vis-à-vis Utah statutes, for which this § 1983 complaint is not an appropriate vehicle. After all, § 1983 is meant only to provide a cause of action based on a state or local employee's "deprivation of any rights . . . secured by the [*Federal*] Constitution and laws." 42 U.S.C.S. § 1983 (2025) (emphasis added); *see also Diaz v. Lampela*, 601 F. App'x 670, 677 (10th Cir. 2015) (unpublished) ("An action under § 1983 . . . cannot be maintained on the basis of alleged violations of state law." (quoting *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) (cleaned up)).

### d. Conclusion

Under the analysis from each above subsection, Plaintiff's allegations about money confiscation fail to state a claim upon which relief may be granted. The money-confiscation claim is therefore dismissed.

### 3. Isolation Without Cause

Plaintiff makes the following allegations about isolation without cause: While in UDOC's Draper facility, Plaintiff "was placed in isolation" under "the excuse of . . . exposure to Covid-19," though he had already contracted and recovered from COVID-19 and thus "was immune." (ECF No. 5, at 3-4.) In that situation, "defendants subjected [Plaintiff] to cruel and unusual punishment when they isolated him in his cell for 23 1/2 hours a day . . . in a cell, with a cellmate, which is too small for two people . . . without access to programs, education, employment and other privileges." (*Id*.)

Plaintiff's spare and conclusory allegations do not meet the standards Plaintiff was advised of in the Cure Order. (ECF No. 22.) In fact, this claim is not linked to a single named defendant; there is no hint as to which of the individual defendant(s) may have isolated him. (ECF No. 5.) To designate the defendants involved, Plaintiff unacceptably lumps them together, using the loose term "defendants," when describing who isolated him. (*Id.*) Though thoroughly alerted to his pleading duties, (ECF No. 22), Plaintiff chose to rely on his original complaint, which does not "isolate the allegedly unconstitutional acts of each defendant," (ECF No. 5); thus, Plaintiff gives inadequate notice of "the nature of the claims against each" defendant. *Robbins*, 519 F.3d at 1250. Indeed, Plaintiff does not heed the Court's direction that a full explanation of the "'who,' 'what,' . . . 'when,' and 'why'" is required, leaving his allegations insufficient to state a claim. (ECF No. 22 (quoting *Robbins*, 519 F.3d at 1248).)

Further, Plaintiff's terse assertions of unconstitutional isolation do not "give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original). This claim of action is framed in truly nothing "more than 'unadorned, the-defendant-unlawfully-harmed-me accusation[s].'" *Eaves*,

2024 U.S. App. LEXIS 12964, at *2-3 (quoting *Iqbal*, 556 U.S. at 678). Without specifying individual defendant behaviors, Plaintiff says he was harmed but does not provide crucial links between any one defendant and any his allegation of unconstitutional treatment. And he does not provide factual details that build toward the support needed for each element of separate causes of action. Indeed, "[f]acts, not conclusions, must be pleaded"; the Court is not required to accept as true "a 'legal conclusion couched as a factual allegation.'" *Renaud*, 2023 U.S. Dist. LEXIS 19808, at *8 (quoting *Iqbal*, 556 U.S. at 678).

It is important to note that a conditions-of-confinement claim's adequacy is drawn from "the particular facts of each situation[, so] the 'circumstances, nature, and duration of the challenged conditions must be carefully considered.'" *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id.* As the severity of the condition increases, the length of exposure required to make out a constitutional violation decreases. *Id.* In other words, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations . . . 'may meet the standard despite a shorter duration." *Id.* (citations omitted).

However, Plaintiff's curt statements about his isolation, (ECF No. 5), do not support any part of the elements of such a cause of action.[5] For instance, there are no factual allegations from which to draw an inference about **a.** the duration of his deprivations and **b.** the seriousness of injuries that are unidentified, except to vaguely say that Plaintiff "experienced increased pain in his legs." (*Id.*) The latter, despite the requirement that "the [physical] deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Thus, the

---

[5]The Cure Order gave Plaintiff a full paragraph of direction explaining the elements of an inadequate-physical-treatment cause of action, yet he chose not to apply the direction by filing an amended complaint. (ECF Nos. 22, at 6-7.)

first prong of a cruel-and-unusual-punishment claim has not been met with requisite allegations. Further, there are no factual allegations from which to draw an inference about any particular defendant's knowledge of whether Plaintiff's harm was serious, and that defendant's subsequent decision to do nothing to help Plaintiff, despite the defendant's knowledge of serious harm. The Complaint does not give "the particular facts of" Plaintiff's deprivations so that the Court may carefully consider "the circumstances, nature, and duration of the challenged conditions." *Despain*, 264 F.3d 965 at 974 (cleaned up).

To summarize, Plaintiff's claims are all, fatally, not linked to any specific defendant, despite Plaintiff being thoroughly instructed as to his pleading duties and warned that such omissions would require dismissal. Plaintiff's articulation of his allegations fails to "isolate the allegedly unconstitutional acts of each defendant"; Plaintiff therefore gives insufficient notice of "the nature of the claims against each" defendant. *Robbins*, 519 F.3d at 1250. For these oversights, and because the facts Plaintiff alleges are insufficient to support plausible claims of unconstitutionally inhumane carceral conditions, this cause of action is dismissed.

### 4. Lack of Due Process in Disciplinary Appeal

Plaintiff makes the following allegations about his disciplinary appeal: Plaintiff was disciplined for "clos[ing] his cell door when another inmate tried to move into his cell." (ECF No. 5, at 4.) If the disciplinary officer had "review[ed] the video surveillance he would [have] see[n] that [Plaintiff] was not impeding the other inmate from moving into his cell." (*Id.*) Instead, Plaintiff was found guilty on the unconstitutional "some evidence" standard applicable to prison disciplinary proceedings, "based only on an officer's report." (*Id.*) Plaintiff "complains that 'some evidence' standard used is not constitutional when it is only based on the report of the officer's report." (*Id.* at 4-5.) Plaintiff states that his "Fifth and Fourteenth Amend[ment rights] to due

process of law is being violated by the defendants who conduct disciplinary hearings and are unwilling to consider all evidence that is available to determine the guilt or innocence of an offense." (*Id.* at 7.)

As with the isolation issue above, Plaintiff's lean allegations and arguments about his disciplinary proceedings' result do not meet the standards contained in the Cure Order. (*See* ECF No. 22, at 4.) In his Complaint, once again, Plaintiff refers to the generic term "defendants," as the violators of his civil rights. (ECF No. 5, at 7.) Again, Plaintiff--though carefully alerted to his pleading responsibilities--chose to proceed with this original complaint that "lump[ed]" defendants together, "despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]," and the warning that such a designation of defendants "will trigger swift and certain dismissal." (ECF No. 22, at 5-6 (quoting *Roemer*, 764 F. App'x at 790-91 & n.5).) Considering Plaintiff rebuffed an informed chance to amend, the Court lacks "reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original).

In sum, because Plaintiff has not affirmatively linked a defendant to this cause of action, it is dismissed.

### 5. Grievance Disruption

Plaintiff makes the following allegations about grievance disruption: "[D]efendants are consistently late in responding to [Plaintiff's] grievances resulting in his ability to have a grievance resolved in a timely manner." (ECF No. 5, at 5.) The delay in grievance resolution can result in Plaintiff being longer "subjected to additional and unnecessary cruel and unusual punishment." (*Id.*) Defendants have also told Plaintiff "that he is subjected to punishment if he continues to file frivolous grievances." (*Id.* at 6.) "The threats and hinderance of [Plaintiff's] use

of the grievance system results in [UDOC] denying . . . [Plaintiff] access [to] the grievance system and [is] tantamount to denying him access to the courts." (*Id.*) Finally, "[i]f a grievance is responded to the responder changes the facts and rewrites Utah Code when quoting it just to make their argument win." (*Id.*) Plaintiff asserts that these allegations have resulted in violation of his First, Fifth, and Fourteenth Amendment rights. (*Id.* at 7.)

Again, Plaintiff has doomed this cause of action from the outset by failing to specify who allegedly violated his federal constitutional rights here. (ECF Nos. 5; 22, at 5-6 (quoting *Roemer*, 764 F. App'x at 790-91 & n.5).) This alone results in dismissal for failure to state a claim upon which relief may be granted.

Alternatively though, Plaintiff essentially alleges Defendants thwarted adequate access to the grievance process, though Plaintiff was required to exhaust his administrative remedies in the grievance process to enable him to validly file prisoner civil-rights actions in federal court, (*id.*). *See* 42 U.S.C.S. § 1997e(a) (2025) ("No action shall be brought with respect to prison conditions under . . . 42 U.S.C. 1983[], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

Still, "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). And, "there is no independent constitutional right to state administrative grievance procedures. Nor does the state's voluntary provision of administrative grievance process create a liberty interest in that process." *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (unpublished); *see also Dixon v. Bishop*, No. CV TDC-19-740, 2020 U.S. Dist. LEXIS 41678, at *20 (D. Md. Mar. 11, 2020) ("[P]risons do not create a liberty interest protected by the Due Process Clause when they adopt administrative

mechanisms for hearing and deciding inmate complaints[;] any failure to abide by the administrative remedy procedure or to process [grievances] in a certain way does not create a constitutional claim.").

Also, Section 1997e(a)'s exhaustion requirement depends on an administrative remedy's availability. *Ross v. Blake*, 578 U.S. 632, 642 (2016). As the Supreme Court put it, that means "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Court further identified three situations "in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643. The two that are potentially relevant here are as follows: (1) "[W]hen (despite what regulations or guidance materials may promise) [the administrative procedure] operates as a simple dead end-- with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* And, (2) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. Thus, Plaintiff would not necessarily be foreclosed from bringing unexhausted claims in this Court. In response to a defendant's possible affirmative defense that Plaintiff had not fully grieved (exhausted) a claim, Plaintiff would have the chance to rebut with a showing that grievance remedies were not available. *Id.* at 642-44. So Defendants' alleged failure to observe Plaintiff's First, Fifth, and Fourteenth Amendment rights around grievances did not necessarily "thwart his ability to seek redress." (ECF No. 5, at 7.)

Accordingly, these allegations are dismissed for failure to state a claim upon which relief may be granted.

## C. ORDER

For failure to state a claim upon which relief may be granted, **IT IS ORDERED** that Plaintiff's Complaint, (ECF No. 5), is **DISMISSED** with prejudice, *See* 28 U.S.C.S. § 1915(e)(2)(B) (2025). Plaintiff's opportunity to amend proved futile when Plaintiff flatly rejected the Court's guidance and requirement that Plaintiff amend his complaint to raise valid claims.

DATED this __17th__ day of June, 2025.

BY THE COURT:

_____
JUDGE DAVID NUFFER
United States District Court